UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMAR OGLETREE,

        Petitioner,

V.

ANTHONY ZON,

        Respondent.

**REPORT AND RECOMMENDATION**

03-CV-945

## I. INTRODUCTION

Petitioner Jamar Ogletree, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 2000, he was convicted in a New York State court of two counts of Murder in the First Degree and one count of Criminal Possession of a Weapon in the Third Degree and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 17).

## II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the state court records. The

nineteen-year old female victim ("Victim[1]") was found dead at home in a pool of blood by her mother on September 23, 1999. (T[2] at 819). Victim lived with her two daughters, ages two and three-years old, in an apartment in the City of Syracuse, New York. (T at 807). Periodically, her boyfriend, Scott Mayer lived in the apartment too. (T at 808). Petitioner and his girlfriend lived next door to Victim. (T at 1676, 2020).

The morning of her death, Victim took her children for a dentist appointment at 10:30 a.m. (T at 1024-1025). She left the dentist's office at approximately 11:00 a.m. (Id.). Her mother found her dead at about 3:00p.m. Victim's mother, Cindy Harding, visited her everyday after work. However, on September 23, 1999, there was no answer when Ms. Harding knocked at the door. (T at 817). When Ms. Harding looked in a window, she saw her daughter laying naked on the floor in a pool of blood and her two granddaughters sitting on the couch near her. Ms. Harding called to nearby construction workers, who phoned the police. (T at 818, 873-874).

There was blood covering the apartment, starting in the upstairs bedroom, down the stairs, to the room where Victim's body was found. (T at 838-840, 970-973, 1331-1333). Amongst the blood evidence at the scene were bloody footprints, which had complete heel-to-toe foot patterns of the left and right bare feet, which were later determined to match Petitioner's feet. (T at 1596-1597).

On the evening of September 23, 1999, Petitioner received medical treatment for a cut to his head, hand and upper arm. (T at 1035 -1039, 1045, 1048, 1066-1073, 1076,

---

[1]Pursuant to New York State Civil Rights Law § 50-b, which protects the privacy of even deceased victims, this Court will not refer to the victim by her actual name and instead will use the term "Victim".

[2]References preceded by "T" are to the transcript pages of Petitioner's trial.

1209, 1264). Petitioner's girlfriend also noticed scratch marks on his back that appeared to be fingernail scratch marks. (T at 1691). This, along with statements made by Petitioner regarding Victim's death caused concern to Petitioner's girlfriend and she met with the police and provided them a statement regarding Petitioner's possible involvement in the murder. (T at 1693).

On September 24, 1999, the police spoke with Petitioner. After receiving his *Miranda*[3] warnings, Petitioner told the police he had nothing to do with Victim's death. However, later, Petitioner confessed that he was present in Victim's home at the time of her death. (T at 1256- 1262). He claimed that Victim attacked him after they had consensual sex in the upstairs bedroom. (T at 1259). Petitioner claimed that Victim accidentally stabbed herself while he struggled to disarm her. (T at 1261). Petitioner signed a written statement and told the police where he disposed of the knife and clothing that he had taken from the scene. (T at 1248, 1254). At trial, Petitioner admitted the knife was his, stating that he carried it for protection. (T at 2049-2050, 2055, 2126-2127).

An Onondaga County Grand Jury returned Indictment Number 99-1193-1, which charged Petitioner with two counts of Murder in the First Degree, in violation of New York Penal Law ("NYPL") § 125.27(1)(a)(vii);[4] three counts of Murder in the Second Degree, in violation of NYPL § 125.25(1) (intentional murder), § 125.25(3) (felony murder), § 125.25(3) (felony murder); Rape in the First Degree, in violation of NYPL § 130.35(1), Sodomy in the First Degree, in violation of NYPL § 130.50(1); and Criminal Possession of a Weapon in

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[4] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

3

the Third Degree, in violation of NYPL § 265.02(1).

Subsequently, the Grand Jury returned Indictment Number 2000-0086-1, which contained two counts of Murder in the First Degree, in violation of NYPL § 125.27(1)(a)(vii). This indictment superseded the former Murder in the First Degree counts contained in the original indictment. The two indictments were thereafter consolidated for trial. (A at A4).[5]

### B.    State Trial Court Proceedings

The Honorable Anthony F. Aloi, Onondaga County Court Judge, presided over Petitioner's trial proceedings. The trial began on September 25, 2000. Petitioner was represented at trial by Paul G. Carey, Esq. On October 6, 2000, the jury found Petitioner guilty of two counts of Murder in the First Degree and one count of Criminal Possession of a Weapon in the Third Degree. (A at A4).

On October 20, 2000, Petitioner was sentenced to life imprisonment without parole for each of his two convictions of Murder in the First Degree, and two and one third years to seven years for his conviction of Criminal Possession of a Weapon in the Third Degree, to run concurrently with the two life sentences. (S at 23-24).[6]

### C.    State Appellate Proceedings

Petitioner, represented by Gerald T. Barth, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court. Petitioner

---

[5] References preceded by "A" are to the pages of the Appendix before the Appellate Division, Fourth Department provided to this Court for these proceedings.

[6] References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

asserted three arguments: (1) that the evidence was insufficient to convict him; (2) that he was denied a fair trial by prosecutorial misconduct; and (3) the sentence was excessive. In a decision issued on June 14, 2002, the Appellate Division affirmed Petitioner's conviction and sentence. People v. Ogletree, 743 N.Y.S.2d 372 (4th Dep't 2002). Petitioner's application for leave to appeal to the Court of Appeals was denied on September 19, 2002. People v. Ogletree, 98 N.Y.2d 731 (2002).

### D. Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on July 28, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner was thereafter ordered to file an amended petition. (Docket No. 3). On September 19, 2003, Petitioner filed his Amended Petition, asserting two grounds for habeas relief: (1) prosecutorial misconduct; and (2) insufficient evidence. (Docket No. 6).

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

### A. Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C.

§ 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court

6

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.      Petitioner's Claims**

As set forth above, Petitioner asserts two grounds for habeas relief. Both grounds will be addressed below in turn.

   **1.      Prosecutorial Misconduct**

For Petitioner's first claim for habeas relief he asserts that prosecutorial misconduct prevented him from having a fair trial. Specifically, he asserts that the

"prosecutor's cross-examination was sarcastic." (Docket No. 6 at 5). In addition, Petitioner claims that the prosecutor misstated the evidence in summation, appealed to the sympathy of the jury in summation, forced Petitioner to say a witness was lying, vouched for witnesses in summation, and expressed a personal belief in Petitioner's guilt. (Docket No. 6 at 5). Respondent argues that habeas review of this claim is barred by Petitioner's procedural default.

### a.    Procedural Default

When addressing this claim, the Appellate Division stated that "[m]any of the alleged instances of misconduct are not preserved for our review (see CPL 470.05[2] ), and we conclude that the alleged misconduct was not so egregious that defendant was thereby deprived of his right to a fair trial." Ogletree, 743 N.Y.S.2d 372. The Appellate Division's ruling that some of the alleged instances of misconduct were not preserved for their review was based upon section 470.05 (2) of the New York Criminal Procedure Law, which is commonly known as the "contemporaneous objection" rule.

Therefore, the Appellate Division was basing its finding on Petitioner's failure to lodge a "contemporaneous objection" to the prosecutorial misconduct at trial. Respondent asserts that the Appellate Division's reliance on the contemporaneous objection rule precludes this Court from reviewing Petitioner's claim.

Although non-compliance with the contemporaneous objection rule generally bars federal habeas review, the "mere invocation of a procedural bar does not. . . preclude review" by a federal court. Caston, 74 F. Supp. 2d at 266-67; see also Miller v. Walker, 413 F. Supp.2d 251, 259 (W.D.N.Y. 2006).

Indeed, as the Second Circuit has noted, the habeas court's "responsibility to ensure

that the state rule is 'adequate' obligates [the court] to examine the basis for an application of state law." Garcia, 188 F.3d at 77; see also Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("Before accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default."). Where the petitioner clearly complied with the applicable state procedural rule, the bar asserted by the state court will not preclude federal habeas review. See Sanford v. Burge, 334 F.Supp.2d 289, 298-300 (E.D.N.Y. 2004); Cotto, 331 F.3d at 240 (citing Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002)).

As such, and because the Appellate Division only stated that "many" instead of "all" of the alleged instances were not preserved for their review, this Court must examine the adequacy of the alleged procedural default cited by the Appellate Division in this particular case[7].

To determine which of Petitioner's prosecutorial misconduct claims are procedurally defaulted before this Court, a review of the trial transcript is necessary to determine which claims before the Appellate Division were preserved for their review. This review shows that Petitioner's trial counsel did, in fact, interpose contemporaneous objections to what he referred to in his brief before the Appellate Division as "sarcastic" cross-examination of the defendant. (T at 1278-1280, 2186, 2194-2195, 2210-2211, 2236-22-42). Therefore, this Court will review the merits of Petitioner's claim.

### b. Merits

---

[7]While Petitioner does not allege many specific supporting facts for his argument, in keeping with the principle that *pro se* complaints are to be construed liberally, this Court will review the specific arguments alleged in his appeal before the Appellate Division. Haines v. Kerner, 404 U.S. 519, 520 (1972)

9

Even assuming *arguendo* that some or all of Petitioner's claims are not procedurally barred, for the reasons set forth below, his claim of prosecutorial misconduct should be denied in its entirety.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) (quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted). Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " Id. (quoting Forlorma, 94 F.3d at 94).

### i.     Alleged Misconduct

On appeal to the Appellate Division, Petitioner outlined a series of objections, which may be grouped into two (2) general categories: first, Petitioner argues that the prosecutor improperly played to the jury's sympathy; second, he contends the prosecutor misstated evidence and unfairly cross-examined Petitioner.

While a "prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury," it is "impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion." United States v. Young, 470 U.S. 1, 8, 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoting the ABA Standards for Criminal Justice 3-4.8 (2d ed.1980) and United States v. Wexler, 79 F.2d 526, 529-30 (2d Cir.1935)).

In the present case, Petitioner points to a number of instances in which the prosecutor allegedly sought to inflame the passions of jury. For example, the prosecutor's opening statement included a reference to the fact that Victim was pregnant at the time of her murder. (T 787). The assistant medical examiner testified during trial that Victim was pregnant and that the pregnancy was likely "tubal or ectopic." (T at 1827-1828). The first exhibit offered by the prosecution was a photograph of Victim with one of her children. During summation, the prosecutor repeatedly and graphically described the murder.[8]

Prosecutors may not repeatedly insert prejudicial comments not supported by the evidence. See, e.g., Lee v. Bennett, 927 F.Supp. 97, 105-06 (S.D.N.Y.), aff'd, 104 F.3d 349 (2d Cir.1996). However, "statements during summation are permissible if they constitute

---

[8]The following comments are illustrative: "He tore her anus open, and he ejaculated insider of her, for his own deviant pleasure." (Summation & Charge transcript ("SC") at 5). "This poor girl. They are going to have to roll back her face to find out what injury is underneath her scalp." (SC at 11). "He is a full-service supplier of injuries. Okay? Right top to bottom." (SC at 30).

a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel during summation.' " Roman v. Filion, No. 04 Civ. 8022(KMW)(AJP), 2005 WL 1383167, at *26 (S.D.N.Y. June 10, 2005)(quoting People v. Perez, 18 A.D.3d 480, 794 N.Y.S.2d 439, 440 (2d Dep't 2005)).

While this Court believes that it would have been preferable for the prosecutor to have had better control of his emotions, the comments at issue were supported by the evidence. Moreover, given the particularly gruesome nature of the crime, it was inevitable that the case would be charged with emotion. Most importantly, a description of the Victim's extensive and egregious injuries was necessary to rebut Petitioner's argument that the Victim's wounds were largely self-inflicted. In addition, the trial court instructed the jury to exclude sympathy from their decision-making process. (SC at 113). Lastly, as discussed below, even if the prosecutor's conduct was improper, it was harmless given the overwhelming evidence of guilt.

Petitioner also argues that the prosecutor misstated the evidence and conducted an improper cross-examination of Petitioner. For example, the prosecutor asked Petitioner whether one of the police officer witnesses was lying when he testified that he had read Petitioner his rights. (T at 2137). The prosecutor also asked numerous leading questions on cross-examination designed to advance arguments rather than actually elicit information from Petitioner. [9]

"While the law generally gives prosecutors broad latitude when questioning hostile

---

[9]The following series of comments is illustrative: "That's while she's laying on the ground and you're choking her, is that when she did it?" (T at 2240). "Well, you're on top of her choking her, right?" (T at 2241). "When she's down on the floor and she's almost stopped breathing, is she calling out her children's names?" (T at 2251). All three questions drew objections from defense counsel, with the objection to the last question being sustained by the trial court.

and recalcitrant witnesses, that latitude is not unbounded." United States v. Zackson,12 F.3d 1178, 1184 (2d Cir.1993).  In the instant case, this Court finds that the prosecutor's examination, "went beyond the limits of zealous advocacy." Id.  As noted above, while this was an understandably emotional case, the prosecutor nevertheless had a professional obligation to control his emotions and refrain from asking improper questions.  Thus, the Court strongly disapproves of the prosecutor's excessive comments.

However, as discussed below, in light of the overwhelming evidence of guilt, this Court finds that the prosecutorial misconduct does not require habeas relief.  In this regard, it must be noted that this Court is not required to conclude that the misconduct "could not have had any effect whatever;" rather, the issue is whether the misconduct was relatively " unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Id. (quoting United States v. Rea, 958 F.2d 1206, 1220 (2d Cir.1992) (quoting Yates v. Evatt, 500 U.S. 391,111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)).

### ii.   Lack of Prejudice

In determining whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) *(per curiam));* accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v. Perez, 144 F.3d 204, 209 (2d Cir. 1998).

As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns

upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

As outlined above, some of the prosecution's conduct was improper. However, it did not deprive Petitioner of a fundamentally fair trial because Petitioner was not substantially prejudiced by the conduct.

In this case, Petitioner's conviction was certain even absent the alleged prejudicial conduct. Bentley, 41 F.3d at 824. The prosecution presented evidence of Petitioner's confession to police that he killed Victim. (T at 1248-1262, 1270). While Petitioner claimed that they had consensual sex and that the accidental homicide took place while he was attempting to protect himself from Victim, the physical evidence presented at trial contradicted that assertion. (T at 1256-1262). The knife, bra, and panties recovered from where Petitioner admitted he hid them all pointed to Petitioner's guilt. (T at 1248-1262). For example, the knife recovered belonged to Petitioner. (T at 2049-2050, 2055). The medical evidence established that death was caused by stab wounds in the neck and stomach, blunt force trauma to the head from a curtain rod, and asphyxia from the curtain used as a ligature. (T at 1782, 1787-1789, 1793, 1840-1841, 1845-1846, 1912-1913). Victim had defensive wounds on her hands from fighting off the knife attack. (T at 1777-1779, 1884). Her vagina and anus bore signs of trauma consistent with forcible sexual intercourse. (T at 1829). Her underpants had been cut open, and her bra straps were cut in the front. (T

at 1116-1117, 1537, 1546).  There were bloody footprint heel-to-toe patterns matching Petitioner's feet found at the scene. (T at 1596-1597).  There was blood in many places in the apartment, starting in the upstairs bedroom, going down the stairs and through the room where Victim's body was found, and into the basement, where it formed a pool of blood that had leaked through the floorboards.  (T at 838-840, 970-973, 1328-1329, 1331-1333).

Petitioner has failed to demonstrate that the Appellate Division's finding was a misapplication of established Supreme Court precedent.  In fact, Petitioner is unable to demonstrate any substantial prejudice he suffered as a result of the alleged misconduct of the prosecutor.  In any event, because the proof against Petitioner was so overwhelming, any prejudicial effect from any of the alleged misconduct on the part of the prosecutor would have been too insubstantial to warrant the granting of his habeas petition. See Modica, 663 F.2d at 1181.

Accordingly, Petitioner's claim for habeas relief based upon prosecutorial misconduct should be DENIED.

### B.    Sufficiency of the Evidence

Petitioner's second ground for habeas relief is that the evidence on all charges[10] was insufficient to support his conviction.

---

[10] Although Petitioner asserts the evidence is insufficient "on all charges," his Amended Petition and Memorandum only discuss his murder convictions.  Furthermore, his direct appeal only argued insufficient evidence as to his murder convictions.  Therefore, even if Petitioner was trying to argue the sufficiency of the evidence with respect to his Criminal Possession of a Weapon conviction, which it does not appear he is, such argument would be deemed unexhausted, and this Court would not be allowed to review it.  See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Therefore, this Court will discuss the sufficiency of the evidence with respect to Petitioner's two murder convictions.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

Petitioner contends that the testimony of the assistant medical examiner was consistent with his defense theory that the homicide was accidental.  The Appellate Division rejected Petitioner's contention that the evidence was insufficient.  Ogletree, 743 N.Y.S.2d at 372.  For support of his contention, Petitioner points to the testimony elicited on cross-examination of the assistant medical examiner that the vaginal bruising could have

16

occurred during consensual sex.[11] (Docket No. 6 at 5). However, a review of the trial transcript reveals that the medical examiner's medical opinion with respect to the injuries to Victim's vaginal and anal areas, was that those injuries were consistent with forcible sexual intercourse. (T at 1829). Her testimony on cross-examination that it was a *possibility* for Victim's vagina to sustain injury during consensual sex does not change her medical opinion that Victim's injuries in this case were from forcible intercourse. (T at 1920).

Upon habeas review, this Court finds that Petitioner has not met his "very heavy burden" of showing that no rational trier of fact could have found that the prosecution established his guilt beyond a reasonable doubt with respect to the charges in the indictment of which he was convicted.

A person is guilty of Murder in the First Degree when, with intent to cause the death of another person, he causes the death of such person or of a third person; and the victim was killed while the defendant was in the course of committing or attempting to commit and in the furtherance of a specific crime; among those crimes listed are rape in the first degree and sodomy in the first degree. See NYPL § 125.27(1)(a)(vii).

When reviewing the evidence set forth above in the light most favorable to the prosecution, it is readily apparent that Petitioner cannot meet his very heavy burden in order to prevail on this claim. Ponnapula, 297 F.3d at 179. As discussed more fully

---

[11] In Petitioner's Amended Petition, he claims that the medical examiner testified that the vaginal bruising and anal tear could have occurred during consensual sex *without the use of proper lubrication*. (Docket No. 6 at 5)(emphasis added). However, this Court's review of the record reveals that the medical examiner's testimony only stated that it was possible that the *vaginal* bruising could have resulted from consensual sex but did not go on to say "*without proper lubrication*" as Petitioner suggests. See (T at 1920 -1923).

above, the prosecution presented evidence of Petitioner's own statement to police that he killed Victim. (T at 1248-1262, 1270). The medical evidence established that death was caused by stab wounds in her neck and stomach. (T at 1782, 1787-1789, 1793, 1840-1841, 1845-1846, 1912-1913). Victim had defensive wounds on her hands from fighting off the knife attack. (T at 1777-1779, 1884). Her vagina and anus bore signs of trauma consistent with forcible sexual intercourse. (T at 1800- 1803, 1829). Her underpants had been cut open, and her bra straps were cut in the front. (T at 1116-1117, 1537, 1546). There were bloody footprint heel-to-toe patterns matching Petitioner's feet found at the scene. (T at 1596-1597).

Based on these facts, and the remaining, overwhelming, evidence against Petitioner presented at trial, any rational trier of fact could have found him guilty of Murder in the First Degree beyond a reasonable doubt. Accordingly, Petitioner's claim for habeas relief based on a theory of insufficient evidence should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Jamar Ogletree's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that no certificate of appealability issue. See 28 U.S.C. § 2253(c)(2) (1996).

                    Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

DATED:      August 27, 2007

              Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[12]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

---

[12]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Auburn Correctional Facility, therefore, the correct Respondent is Harold Graham, the Superintendent of the Auburn Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Harold Graham.
    The Clerk of the Court is directed to terminate Anthony Zon as Respondent, add Harold Graham, Superintendent of the Auburn Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

19

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 27, 2007

Victor E. Bianchini
United States Magistrate Judge